UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JAVIER ROSARIO,

          Plaintiff,

v.

WESTERN REGIONAL OFF TRACK BETTING
CORPORATION,

          Defendant(s).

COMPLAINT

Civ. No.:

## JURY TRIAL DEMANDED

Plaintiff demands a jury to try all claims triable by a jury.

## PRELIMINARY INTRODUCTION

1.      This is an action against Defendant WESTERN REGIONAL OFF TRACK
BETTING CORPORATION ("OTB"), for discrimination against Plaintiff
JAVIER ROSARIO ("ROSARIO"), who after being diagnosed in March 2005,
continues to suffer from Hodgkin's Lymphoma, a rare form of cancer, and for
retaliatory discharge in violation of the Americans with Disabilities Act 42 U.S.C.
§ 12101, *et seq.* ("ADA") and the New York State Human Rights Law, Executive
Law § 290 et seq. ("NYSHRL").

## JURISDICTION AND VENUE

2.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C § 1331 and 1343, 42
U.S.C. § 2000 (e), 29 U.S.C. § 1331, 29 U.S.C. §§ 206 and 216; the Court also
has supplemental jurisdiction pursuant to 28 U.S.C. 1367 to adjudicate Plaintiff's
claims under state law.

3.      Venue is proper pursuant to 28 U.S.C. §1391

4.       Plaintiff filed a verified complaint with the New York State Division of Human Rights ("NYSDHR") on December 4th, 2006.  On August 7th, 2007, the NYSDHR found PROBABLE CAUSE to believe that Rosario had been discriminated against in violation of the ADA and the NYSHRL.  A Right to Sue Notice was issued by the Equal Employment Office on September 11th, 2008 and is annexed herein as Exhibit A.  Less than ninety (90) days have elapsed since Rosario's receipt of that notice and his subsequent filing of the original complaint in this matter.

## PARTIES

5.       Rosario is an individual male who was at all times relevant herein a resident of the County of Monroe, State of New York.

6.       Upon information and belief, Defendant is a corporation organized and operating under the laws of the State of New York and/or licensed to do business in the State of New York and is an employer for the purposes of application of the relevant statutes codes and laws set forth herein.

## FACTS

7.       Rosario was hired by OTB in the year 2000 as a part time printer, and was promoted to a full time position six months later.

8.       On April 14, 2001, Rosario was promoted to the position of "Lead Printer" and "Night Supervisor."

9.       Rosario was a satisfactory employee, and was otherwise qualified for his position.

10.      In March of 2005, Rosario was diagnosed with Hodgkin's Lymphoma, a rare form of cancer.

11.     In or about March of 2005, Rosario provided OTB with a note from his physician
        indicating that he would have to be out on leave from work until November 1,
        2005 due to the fact that he would be commencing chemotherapy and radiation
        treatment.

12.     Rosario submitted the physician's note to Supervisor Mark Adams ("Supervisor
        Adams"), who assured Rosario that he did not have to worry about losing his job
        because he had a lot of sick and personal time saved up.

13.     At no time, however, did OTB ever inform Rosario of his rights to take leave
        under the FMLA.

14.     Rosario returned to work in October of 2005.

15.     At the time he returned to work through the time he was terminated, Rosario was
        under the continuous treatment of a physician for cancer and receiving radiation
        treatment.

16.     As a result of Rosario's medical condition and continuous medical treatment for
        the same, Rosario requested a reasonable accommodation in the form of
        permission of his immediate supervisor to receive personal calls on his cell phone
        from his family, friends and physician as he was still undergoing radiation
        treatment for his medical condition. Supervisor Adams gave Rosario permission
        to do so. Further, this permission was never revoked by defendant nor was
        Rosario ever verbally warned or written up for these actions.

17.     As a result of his medical condition and his continuous medical treatment for the same, Rosario requested a reasonable accommodation in the form of short breaks to allow him to get fresh air and/or put water on his face as he was still undergoing radiation for his medical condition which caused, in part, nausea. During these short breaks, a co-worker would cover for Rosario. Supervisor Adams gave Rosario permission to do so. Further, this permission was never revoked by defendant nor was Rosario ever verbally warned or written up for these actions.

18.     On March 29th, 2006 Rosario was called to a meeting with Vice President Patrick Murphy ("VP Murphy") and Supervisor Adams.

19.     Prior to the meeting, Rosario overheard two co-workers state that "someone was going to rack up a large medical bill" due to his diagnosis of cancer and that OTB was going to try to fire him so that they would not be responsible for paying Rosario's medical bills.

20.     At that meeting, Rosario was indeed informed by Vice President Murphy and Supervisor Adams that he was terminated.

21.     The reasons given for Rosario's termination were constant telephone calls, frequent and extensive unauthorized absences, and serious disruption of the print shop operations.

22.     As stated above, these absences were authorized by Supervisor Adams, that the telephone calls were from his doctor and made with Supervisor Adam's consent, and that the breaks that he took during work time were no longer than the breaks taken by similarly situated employees.

4

23.       In fact, Plaintiff's requests for reasonable accommodations were authorized by
          Supervisor Adams and Plaintiff was never verbally warned or written up for
          exercising his reasonable accommodations.

24.       Rosario was terminated because of his disability and not because of the pretextual
          reason given to him as the basis for his termination.

## FIRST CAUSE OF ACTION

### As And Against Defendant for Willful Violations of the FMLA

25.       Rosario repeats and re-alleges by reference each and every allegation contained in
          the above stated paragraphs and incorporates the same as though fully set forth
          herein.

26.       That the above acts were willful violations of the Family Medical Leave Act in
          that OTB has denied, restrained and interfered with Rosario's exercise of, attempt
          and ability to exercise any and all of his rights under the FMLA.

27.       Rosario was prejudiced by this failure in that he was unable to take the leave to
          which he was entitled under the law.

28.       Rosario is therefore entitled to recover damages as provided in 29 U.S.C. § 2617.

## SECOND CAUSE OF ACTION

### As and Against Defendant for Retaliation in Violation of the FMLA

29.       Rosario repeats and re-alleges by reference each and every allegation contained in
          the above stated paragraphs and incorporates the same as though fully set forth
          herein.

5

30.    Rosario engaged in protected activity when he took leave from work for an
       FMLA qualifying condition because of his diagnosis and treatment of Hodgkin's
       Lymphoma. In March of 2005, Rosario was diagnosed with Hodgkin's
       Lymphoma, a rare form of cancer. In or about March of 2005, Rosario provided
       OTB with a note from his physician indicating that he would have to be out on
       leave from work until November 1, 2005 due to the fact that he would be
       commencing chemotherapy and radiation treatment. Rosario submitted the
       physician's note to Supervisor Mark Adams ("Supervisor Adams"), who assured
       Rosario that he did not have to worry about losing his job because he had a lot of
       sick and personal time saved up. Thus, Rosario informed OTB of his need for
       leave from a medical condition which was FMLA qualifying. Therefore,
       Rosario's absences from work were FMLA qualifying.

31.    Upon returning to work Rosario requested, and was granted by Supervisor
       Adams, the ability to be absent from work and to take breaks due to his medical
       condition and the treatment thereof.

32.    Rosario was wrongfully terminated about six (6) months after returning to work.

33.    As a direct and proximate result of OTB's willful, knowing and intentional
       discrimination against him, Rosario has suffered and will continue to suffer severe
       mental and emotional anguish, and he has suffered and will continue to suffer a
       loss of earnings and other employment benefits and job opportunities. Rosario is
       thereby entitled to general and compensatory damages in amounts to be proven at
       the time of trial.

6

34.     OTB's conduct as described herein was malicious and oppressive, and done with
        a conscious disregard of Rosario's rights. The acts were performed with the
        knowledge of an employers' economic power over its employees. OTB ratified
        the unlawful conduct of its employees in this action. Consequently, Rosario is
        entitled to exemplary damages from all defendants.

## THIRD CAUSE OF ACTION

### As And Against Defendant for Violations of the ADA

35.     Rosario repeats and re-alleges by reference each and every allegation contained in
        the above stated paragraphs and incorporates the same as though fully set forth
        herein.

36.     As a result of Rosario's medical condition and continuous medical treatment for
        the same, Rosario requested a reasonable accommodation in the form of
        permission of his immediate supervisor to receive personal calls on his cell phone
        from his family, friends and physician as he was still undergoing radiation
        treatment for his medical condition. Supervisor Adams gave Rosario permission
        to do so. Further, this permission was never revoked by OTB nor was Rosario
        ever verbally warned or written up for these actions. As a result of his medical
        condition and his continuous medical treatment for the same, Rosario requested a
        reasonable accommodation in the form of short breaks to allow him to get fresh
        air and/or put water on his face as he was still undergoing radiation for his
        medical condition which caused, in part, nausea. During these short breaks, a co-
        worker would cover for Rosario. Supervisor Adams gave Rosario permission to
        do so. Further, this permission was never revoked by OTB nor was Rosario ever
        verbally warned or written up for these actions. On March 29th, 2006 Rosario was
        called to a meeting with Vice President Patrick Murphy ("VP Murphy") and
        Supervisor Adams. Prior to the meeting, Rosario overheard two co-workers state

7

that "someone was going to rack up a large medical bill" due to his diagnosis of cancer and that OTB was going to try to fire him so that they would not be responsible for paying Rosario's medical bills. At that meeting, Rosario was indeed informed by Vice President Murphy and Supervisor Adams that he was terminated. The reasons given for Rosario's termination were constant telephone calls, frequent and extensive unauthorized absences, and serious disruption of the print shop operations. As stated above, these absences were authorized by Supervisor Adams, that the telephone calls were from his doctor and made with Supervisor Adam's consent, and that the breaks that he took during work time were no longer than the breaks taken by similarly situated employees. In fact, Rosario's requests for reasonable accommodations were authorized by Supervisor Adams and Rosario was never verbally warned or written up for exercising his reasonable accommodations. Rosario's termination was the result of OTB denying him reasonable accommodations which would allow him to fulfill the essential functions of his job.

37.     Upon information and belief, OTB perceived Rosario as being disabled and refused to allow him to continue his work with OTB on that basis.

38.     OTB's refusal to provide or allow reasonable accommodations to Rosario's known disability and/or perceived disability such that he could continue to fulfill the essential functions of his job and its discharge of him because of his disability, constitutes discrimination in violation of the ADA.

8

39.     OTB's refusal to engage in the interactive process with the Rosario, its refusal to
        meaningfully explore reasonable accommodations for his disability and/or
        perceived disability, and OTB's discharge of Rosario constitutes gross, wanton,
        reckless and/or intentional violation of his rights under the ADA, entitling him to
        punitive damages.

40.     OTB violated the ADA by failing to adequately supervise, control, discipline,
        and/or otherwise penalize the conduct, acts and failures to act of OTB as
        described above when they illegally and unlawfully perceived that Rosario could
        not perform the essential functions of his job due to his medical condition, and
        failed to reasonably accommodate his disability.

41.     As a direct and proximate result of OTB's willful, knowing and intentional
        discrimination against him, Rosario has suffered and will continue to suffer severe
        mental and emotional anguish, and he has suffered and will continue to suffer a
        loss of earnings and other employment benefits and job opportunities.  Rosario is
        thereby entitled to general and compensatory damages in amounts to be proven at
        the time of trial.

42.     As a further and proximate result of the OTB's violations of the ADA, Rosario
        has been compelled to retain the services of counsel in an effort to enforce the
        terms and conditions of the employment relationship with OTB, and has thereby
        incurred and will continue to incur, legal fees and costs, the full nature and extent
        of which are presently unknown to the Rosario.  Accordingly, Rosario requests
        that attorney fees be awarded.

9

43.        OTB's conduct as described herein was malicious and oppressive, and done
           with a conscious disregard of Rosario's rights.  The acts were performed with the
           knowledge of an employers' economic power over its employees.  OTB
           ratified the unlawful conduct of its employees in this action.  Consequently,
           Rosario is entitled to exemplary damages from all defendants.

## FOURTH CAUSE OF ACTION

### As and Against Defendant for Retaliation in Violation of the ADA

44.        Rosario repeats and re-alleges by reference each and every allegation contained in
           the above stated paragraphs and incorporates the same as though fully set forth
           herein.

45.        As a result of Rosario's medical condition and continuous medical treatment for
           the same, Rosario requested a reasonable accommodation in the form of
           permission of his immediate supervisor to receive personal calls on his cell phone
           from his family, friends and physician as he was still undergoing radiation
           treatment for his medical condition.  Supervisor Adams gave Rosario permission
           to do so.  Further, this permission was never revoked by OTB nor was Rosario
           ever verbally warned or written up for these actions.  As a result of his medical
           condition and his continuous medical treatment for the same, Rosario requested a
           reasonable accommodation in the form of short breaks to allow him to get fresh
           air and/or put water on his face as he was still undergoing radiation for his
           medical condition which caused, in part, nausea.  During these short breaks, a co-
           worker would cover for Rosario.  Supervisor Adams gave Rosario permission to
           do so.  Further, this permission was never revoked by OTB nor was Rosario ever
           verbally warned or written up for these actions.  On March 29th, 2006 Rosario was
           called to a meeting with Vice President Patrick Murphy ("VP Murphy") and
           Supervisor Adams.  Prior to the meeting, Rosario overheard two co-workers state
           that "someone was going to rack up a large medical bill" due to his diagnosis of
           cancer and that OTB was going to try to fire him so that they would not be

responsible for paying Rosario's medical bills. At that meeting, Rosario was indeed informed by Vice President Murphy and Supervisor Adams that he was terminated. The reasons given for Rosario's termination were constant telephone calls, frequent and extensive unauthorized absences, and serious disruption of the print shop operations. As stated above, these absences were authorized by Supervisor Adams, that the telephone calls were from his doctor and made with Supervisor Adam's consent, and that the breaks that he took during work time were no longer than the breaks taken by similarly situated employees. In fact, Rosario's requests for reasonable accommodations were authorized by Supervisor Adams and Rosario was never verbally warned or written up for exercising his reasonable accommodations. In addition to denying Rosario reasonable accommodations which would allow him to fulfill the essential functions of his job, Rosario's termination was also the result of Plaintiff requesting his need for accommodations and defendant's retaliation in the form of refusing to accommodate Plaintiff's known needs.

46.     Upon information and belief, Plaintiff was and/or OTB perceived Rosario to be disabled and refused to allow him to continue his work with OTB on that basis.

47.     OTB's refusal to provide or allow reasonable accommodations to Rosario's known disability and/or perceived disability such that he could continue to fulfill the essential functions of his job and its discharge of him because of his disability, constitutes retaliation in violation of the ADA.

11

48.     OTB's refusal to engage in the interactive process with the Rosario, its refusal to meaningfully explore reasonable accommodations for his disability and/or perceived disability, and OTB's discharge of Rosario constitutes gross, wanton, reckless and/or intentional violation of his rights under the ADA, entitling him to punitive damages.

49.     OTB violated the ADA by failing to adequately supervise, control, discipline, and/or otherwise penalize the conduct, acts and failures to act of OTB as described above when they illegally and unlawfully perceived that Rosario could not perform the essential functions of his job due to his medical condition, and failed to reasonably accommodate his disability.

50.     As a direct and proximate result of OTB's willful, knowing and intentional discrimination and retaliation against him, Rosario has suffered and will continue to suffer severe mental and emotional anguish, and he has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Rosario is thereby entitled to general and compensatory damages in amounts to be proven at the time of trial.

51.     As a further and proximate result of the OTB's violations of the ADA, Rosario has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of the employment relationship with OTB, and has thereby incurred and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to the Rosario. Accordingly, Rosario requests that attorney fees be awarded.

52.        OTB's conduct as described herein was malicious and oppressive, and done
           with a conscious disregard of Rosario's rights.  The acts were performed with the
           knowledge of an employers' economic power over its employees.  OTB
           ratified the unlawful conduct of its employees in this action.  Consequently,
           Rosario is entitled to exemplary damages from all defendants.

## FIFTH CAUSE OF ACTION

### As and Against Defendant for Retaliation in Violation of the NYSHRL

53.        Rosario repeats and re-alleges by reference each and every allegation contained in
           the above stated paragraphs and incorporates the same as though fully set forth
           herein.

54.        As a result of Rosario's medical condition and continuous medical treatment for
           the same, Rosario requested a reasonable accommodation in the form of
           permission of his immediate supervisor to receive personal calls on his cell phone
           from his family, friends and physician as he was still undergoing radiation
           treatment for his medical condition.  Supervisor Adams gave Rosario permission
           to do so.  Further, this permission was never revoked by OTB nor was Rosario
           ever verbally warned or written up for these actions.  As a result of his medical
           condition and his continuous medical treatment for the same, Rosario requested a
           reasonable accommodation in the form of short breaks to allow him to get fresh
           air and/or put water on his face as he was still undergoing radiation for his
           medical condition which caused, in part, nausea.  During these short breaks, a co-
           worker would cover for Rosario.  Supervisor Adams gave Rosario permission to
           do so.  Further, this permission was never revoked by OTB nor was Rosario ever
           verbally warned or written up for these actions.  On March 29th, 2006 Rosario was
           called to a meeting with Vice President Patrick Murphy ("VP Murphy") and
           Supervisor Adams.  Prior to the meeting, Rosario overheard two co-workers state
           that "someone was going to rack up a large medical bill" due to his diagnosis of

cancer and that OTB was going to try to fire him so that they would not be responsible for paying Rosario's medical bills. At that meeting, Rosario was indeed informed by Vice President Murphy and Supervisor Adams that he was terminated. The reasons given for Rosario's termination were constant telephone calls, frequent and extensive unauthorized absences, and serious disruption of the print shop operations. As stated above, these absences were authorized by Supervisor Adams, that the telephone calls were from his doctor and made with Supervisor Adam's consent, and that the breaks that he took during work time were no longer than the breaks taken by similarly situated employees. In fact, Rosario's requests for reasonable accommodations were authorized by Supervisor Adams and Rosario was never verbally warned or written up for exercising his reasonable accommodations. In addition to denying Rosario reasonable accommodations which would allow him to fulfill the essential functions of his job, Rosario's termination was also the result of Plaintiff requesting his need for accommodations and defendant's retaliation in the form of refusing to accommodate Plaintiff's known needs.

55.     Upon information and belief, Plaintiff was and/or OTB perceived Rosario to be disabled and refused to allow him to continue his work with OTB on that basis.

56.     OTB's refusal to provide or allow reasonable accommodations to Rosario's known disability and/or perceived disability such that he could continue to fulfill the essential functions of his job and its discharge of him because of his disability, constitutes retaliation in violation of the NYSHRL.

14

57.     OTB's refusal to engage in the interactive process with the Rosario, its refusal to
        meaningfully explore reasonable accommodations for his disability and/or
        perceived disability, and OTB's discharge of Rosario constitutes gross, wanton,
        reckless and/or intentional violation of his rights under the NYSHRL, entitling
        him to punitive damages.

58.     OTB violated the NYSHRL by failing to adequately supervise, control, discipline,
        and/or otherwise penalize the conduct, acts and failures to act of OTB as
        described above when they illegally and unlawfully perceived that Rosario could
        not perform the essential functions of his job due to his medical condition, and
        failed to reasonably accommodate his disability.

59.     As a direct and proximate result of OTB's willful, knowing and intentional
        discrimination and retaliation against him, Rosario has suffered and will continue
        to suffer severe mental and emotional anguish, and he has suffered and will
        continue to suffer a loss of earnings and other employment benefits and job
        opportunities.  Rosario is thereby entitled to general and compensatory damages
        in amounts to be proven at the time of trial.

60.     OTB's conduct as described herein was malicious and oppressive, and done
        with a conscious disregard of Rosario's rights.  The acts were performed with the
        knowledge of an employers' economic power over its employees.  OTB
        ratified the unlawful conduct of its employees in this action.  Consequently,
        Rosario is entitled to exemplary damages from all defendants.

15

**WHEREFORE,** Plaintiff respectfully requests the Court to enter judgment as to each cause of action in his favor as well as any and all other relief the Court deems just and proper.

Dated: December 1, 2008
Rochester, New York

Respectfully Submitted,

_____
Christina A. Agola, Esq.
Christina A. Agola
Attorneys and Counselors at Law PLLC
2100 First Federal Plaza
Rochester, New York 14614
585.262.3320 (phone)
585.262.2641 (fax)
caaesq@rochester.rr.com

16

**EXHIBIT A**

# NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| | |
|---|---|
| To: **Javier Rosario**<br>3389 Midway Road<br>Albion, NY 14411 | From: **New York District Office**<br>**33 Whitehall Street**<br>**5th Floor**<br>**New York, NY 10004** |

☐  On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **16G-2007-00575** | **John B. Douglass,**<br>**Supervisory Investigator** | **(212) 336-3765** |

(See also the additional information enclosed with this form.)

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA **must be filed in a federal or state court WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

[X]  More than 180 days have passed since the filing of this charge.

[ ]  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X]  The EEOC is terminating its processing of this charge.

[ ]  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ]  The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ]  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

**Spencer H. Lewis, Jr.,**
**Director**

SEP 1 1 2008
(Date Mailed)

Enclosures(s)

cc:  **WESTERN REGIONAL OFF-TRACK BETTING**
8315 Park Road
Batavia, NY 14020

**CHRISTINA A. AGOLA**
**Attorneys and Counselors at Law**
730 First Federal Plaza, 28 East Main Street
Rochester, NY 14614