UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JAVIER ROSARIO,

                              Plaintiff,

              v.

WESTERN REGIONAL OFF TRACK BETTING,

                              Defendant.
_____

**DECISION AND ORDER**

**No. 08-CV-6546T**

### INTRODUCTION

Plaintiff Javier Rosario ("Plaintiff"), represented by counsel, brings this action pursuant to the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et. seq.*, the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* ("ADA"), and the New York State Human Rights Law, N.Y. Exec. Law §§ 290, *et seq.* ("NYSHRL"), against his former employer, Western Regional Off Track Betting ("Defendant").  Plaintiff claims that he was disabled, or perceived to be disabled, due to Hodgkin's Lymphoma, and that Defendant interfered with his rights under the FMLA and retaliated against him for taking FMLA leave from work.  Plaintiff also claims that Defendant discriminated against him on the basis of his disability or a perceived disability by terminating his employment in an attempt to avoid paying Plaintiff's medical bills, and refusing to provide requested accommodations.

Defendant now moves for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rule 56"), arguing that there are no disputed issues of material fact and that Plaintiff,

as a matter of law, has not established a *prima facie* case of discrimination or retaliation. Plaintiff opposes Defendant's motion arguing that there are contested issues of material fact that can only be resolved at trial. For the reasons set forth below, Defendant's motion for summary judgment is granted and Plaintiff's Complaint is dismissed in its entirety.

## BACKGROUND

Plaintiff was hired by Defendant as a printer in 2000. Pl.'s Compl. at ¶ 7. In March of 2005, Plaintiff was permitted to take time off from work pursuant to the FMLA, because he was undergoing treatment for Hodgkin's Lymphoma, a type of cancer. Julie MacDuffie Deposition ("MacDuffie Dep.") at 14-33. Defendant's Clerk of Human Resources, Julie MacDuffie, told Plaintiff that FMLA leave would be approved once he completed the requisite paperwork. Plaintiff Deposition ("Pl. Dep.") at 40-42. Plaintiff provided MacDuffie with a doctor's note and MacDuffie explained the FMLA process to him, and together they completed the necessary paperwork. Id.; see also MacDuffie Dep. at 14-26, 32-33.

On February, 24, 2005, MacDuffie provided Plaintiff with an FMLA leave of absence notice letter. MacDuffie Dep. at 14-26, 32-33; see also Def.'s Ex. M. Plaintiff submitted a request for FMLA leave from March 4 through March 20, 2005, and Defendant approved that request. Id.; see also Def.'s Ex. N. Defendant notified Plaintiff via letter that his leave of absence under the FMLA would

expire on March 20, 2005. _Id._; _see_ _also_ Def.'s Ex. O. Subsequently, Plaintiff submitted a request to extend the FMLA leave from March 21 to June 21, 2005, and Defendant approved that request. _Id._; _see_ _also_ Def.'s Ex. P. Plaintiff later submitted a request for medical leave from June 22 through October 31, 2005, and Defendant approved that request. _Id._; _see_ _also_ Def.'s Ex. Q. Defendant received a letter (dated June 9, 2005) from Plaintiff's oncologist, Dr. Alexander J. Solky, supporting Plaintiff's request for medical leave. _Id._; _see_ _also_ Def.'s Ex. H. MacDuffie also explained to Plaintiff that at the expiration of his leave, he was required to provide a doctor's note verifying his return to work and specifying any restrictions on his ability to work. MacDuffie Dep. at 27-28.

Despite the ample evidence that Plaintiff was granted medical leave under the FMLA, he contends that he was "forced to take short term disability leave," and that "at no time did [Defendant], most particularly Julie McDuffy [sic], ever inform Plaintiff of his rights to take leave under the Family Medical Leave Act." Pl.'s Resp. to Def.'s Local Rule 56(a)(1) Statement at ¶¶ 4-6. However, Plaintiff does not dispute that he submitted the requests for leave as discussed above, that Defendant approved each request, and that he received full healthcare coverage while he was on leave. _Id._ at ¶¶ 7-11, 13.

Plaintiff's last chemotherapy treatment was on July 7, 2005. Dr. Alexander Solky Deposition ("Solky Dep.") at 11. He completed radiation on September 14, 2005. Dr. Kevin Mudd Deposition ("Mudd Dep.") at 20. Because he completed chemotherapy and radiation treatments, Plaintiff's doctors cleared him to return to work in September of 2005. Def.'s Exs. J and G. Thus, Plaintiff returned to work in October of 2005. Pl.'s Compl. at ¶ 14.

Although the documented evidence reveals that Plaintiff's radiation treatment was completed on September 14, 2005, Plaintiff testified that he was still undergoing radiation treatment when he returned to work. Pl. Dep. at 45-47, 88. He also testified that his doctor wrote a letter that specified his restrictions upon return to work. Id. at 46. Although the evidence shows that Dr. Solky wrote a letter dated June 9, 2005, stating that Plaintiff needed to be out of work until November 1, 2005, (Pl.'s Ex. C.) in his deposition, Dr. Solky referenced a letter from Interlakes Oncology & Hematology, dated September 22, 2005, in which his Physician's Assistant, Kelly Halvonik ("PA Halvonik") wrote that, as of that date, "[Plaintiff] may return to work full time with no restrictions." Solky Dep. at 21-16; see also Def.'s Ex. G. Dr. Solky testified that he allowed PA Halvonik to share results with patients. Id. at 25. Additionally, on September 14, 2005, the final day of Plaintiff's radiation treatment, Dr. Mudd wrote a

letter stating: "At this time, [he] [saw] no medical contraindication for [Plaintiff] to return to work." Pl.'s Ex. D.

Mark Adams, Plaintiff's Supervisor ("Supervisor Adams"), testified that, because Plaintiff told him he was still undergoing radiation treatment when he returned to work, he allowed Plaintiff to receive telephone calls from his doctor and family members regarding his treatment and to take short breaks if he experienced nausea. Adams Dep. at 35-36, 63-65. Supervisor Adams testified, however, that Plaintiff would often use these authorized breaks to smoke cigarettes instead. Id.

When he returned to work, Plaintiff worked seven and a half hour shifts and received training regarding the operation of a new digitalized printing press that Defendant had installed during Plaintiff's leave. Id. at 50, 65. Defendant's Director of Public Relations, Henry Nevins, testified that Plaintiff was significantly deficient in his ability to grasp the digital printing system. Nevins Dep. at 15. Nevins instructed Supervisor Adams to set up a timetable to train Plaintiff and to do whatever it took to get him adjusted to the new system. Id. Supervisor Adams reported that he spoke to Plaintiff on several occasions regarding his difficulties with the new system. Id. Between November of 2005 and March of 2006, Nevins had several conversations with Supervisor Adams and Defendant's Executive Vice President, Pat Murphy ("VP Murphy"), about Plaintiff's difficulties mastering the new digital printing

system.  Id. at 18-19.  Nevins continued to receive complaints from Supervisor Adams that Plaintiff was struggling with the new system. Id. at 23.

In December of 2005, Plaintiff received a two-day suspension for "negligence of duty," because he left work with projects unfinished.  Adams Dep. at 25-26.  Throughout the next few months, Supervisor Adams received complaints from other employees that Plaintiff was disappearing during work hours and receiving too many personal telephone calls.  Id. at 39-43.  Supervisor Adams warned Plaintiff about these complaints, and as the complaints persisted, he encouraged the other employees to put their complaints in writing.  Id.  Thus, on March 28, 2006, three employees, Bill Funke, Allison Watson, and Doug Shaw, provided written complaints. Id. at 39-43; see also Def.'s Exs. V, W, and X.  Nevins was informed that Plaintiff was leaving the print shop for excessive amounts of time and that he spent a lot of time on the telephone when he was supposed to be working.  Nevins Dep. at 27.

On March 29, 2006, Defendant terminated Plaintiff's employment due to continued unauthorized and disruptive behavior, consisting of constant personal telephone calls and frequent unauthorized breaks.  VP Murphy Dep. at 48-49.  VP Murphy testified that Defendant terminated Plaintiff's employment because his actions disrupted business operations, he lacked concern for the print shop

operation, and other employees complained about Plaintiff's performance. Id. at 41-49.

Plaintiff alleges that Defendant perceived him to be disabled due to cancer. Pl.'s Dep. at 87. He argues that his employment was not terminated for the aforementioned reasons, but "because of his actual or otherwise perceived disability and for his request for reasonable accommodations." Pl.'s Resp. to Def.'s Local Rule 56(a)(1) Statement at ¶ 37-38. Plaintiff testified that if he had not been terminated, he could have continued to do his job with Defendant. Pl. Dep. at 84.

## DISCUSSION

### I.  Summary Judgment Standard

Rule 56 provides that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, all genuinely disputed facts must be resolved in favor of the non-moving party. Scott v. Harris, 550 U.S. 372, 380 (2007). If, after considering the evidence in the light most favorable to the non-moving party, the Court finds that no rational jury could find in favor of that party, a grant of summary judgment is appropriate. Scott, 550 U.S. at 380 (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587 (1986)).

It is well established that "conclusory statements, conjecture, or speculation" are insufficient to defeat a motion for summary judgment. Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996). The non-movant cannot survive summary judgment simply by proffering "some metaphysical doubt as to the material facts," (Matsushita Elec. Indus. Co., 475 U.S. at 586) or presenting evidence that "is merely colorable, or is not significantly probative." Savino v. City of New York, 331 F.3d 63, 71 (2d Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citation omitted)). Rather, he "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250 (quoting former Fed. R. Civ. P. 56(e)(2); see also D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998) (stating that the "non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of . . . events is not wholly fanciful").

## II. FMLA Claims

The Family Medical Leave Act entitles eligible employees to a total of 12 workweeks of leave during any 12-month period due to, *inter alia*, a serious health condition that interferes with the employee's ability to perform his job. 29 U.S.C. § 2612(a). The FMLA further prohibits employers from discriminating against employees on the basis of exercising their rights under the FMLA.

Plaintiff claims that Defendant both interfered with his attempts to exercise his rights under the FMLA, and retaliated against him on the basis of his use of FMLA leave time.

## A. __Interference with FMLA Rights__

Plaintiff claims that Defendant interfered with his rights under the FMLA because it did not inform him of his rights to take leave, and because he was forced to take short term disability leave and to return to work in October of 2005 when he still had FMLA time remaining. Pl.'s Mem. of Law at 6-8. To make out a *prima facie* case for a claim of interference with FMLA rights under 29 U.S.C. § 2615(a)(1), a plaintiff must establish five elements: "(1) that [he] is an eligible employee under the FMLA; (2) that defendant is an employer as defined in [the] FMLA; (3) that [he] was entitled to leave under [the] FMLA; (4) that [he] gave notice to the defendant of [his] intention to take leave; and (5) that [he] was denied benefits to which [he] was entitled under [the] FMLA. Rice v. Wayne County, 2010 U.S. Dist. LEXIS 125939, at *6 (W.D.N.Y. Nov. 30, 2010) (citing Geromanos v. Columbia Univ., 322 F. Supp. 2d 420, 427 (S.D.N.Y. 2004); Lee v. Heritage Health & Housing, Inc., 2009 U.S. Dist. LEXIS 91419, 2009 WL 3154314, *9 (S.D.N.Y. Sept. 30, 2009)).

Defendant argues that Plaintiff "cannot establish a *prima facie* case of FMLA interference because he was informed that he was

entitled to FMLA leave and given all the leave he was entitled to and more." Def.'s Mem. of Law at 4. Though Plaintiff alleges that Defendant did not inform him of his rights to take leave under the FMLA, and claims he "was prejudiced by this failure in that he was unable to take the leave to which he was entitled under the law," (Pl.'s Compl. at ¶¶ 13, 26) the evidence shows that Plaintiff was informed of his FMLA rights, he indeed took FMLA leave, and returned to work after being cleared by his doctor.

Julie MacDuffie, Defendant's Clerk of Human Resources in charge of employee medical leave, testified that she explained the FMLA process to Plaintiff and that the necessary paperwork was completed. MacDuffie Dep. at 13-26, 32-33. In her testimony, she also identified (1) the FMLA leave of absence notice letter provided to Plaintiff; (2) Plaintiff's request for FMLA leave from March 4 to March 20, 2005 and the notice of approval; (3) the letter notifying Plaintiff that his FMLA leave would expire on March 20, 2005; (4) Plaintiff's request to extend the FMLA leave from March 21 to June 21, 2005 and the notice of approval; (5) Plaintiff's request for medical leave from June 22 to October 31, 2005 and the notice of approval; and (6) a letter from Plaintiff's oncologist supporting his request for medical leave. Def.'s Exs. M, N, O, P, Q, H. The evidence also contains letters from Dr. Mudd and Dr. Solky (dated September 14, 2005, and September 22, 2005, respectively) stating that Plaintiff was able

to return to work without restrictions. Def.'s Exs. J and G. Thus, Plaintiff returned to work in October of 2005. Pl.'s Compl. at ¶ 14.

Plaintiff attempts to dispute these facts by merely pointing to his own affidavit and deposition, where he states he was "forced to take short term disability leave" and claims MacDuffie never informed him of his FMLA rights. Pl. Aff. at ¶¶ 8-9; <u>see also</u> Pl. Dep. lines 7-12, 17-20. MacDuffie's testimony is corroborated by Plaintiff, however, because he admitted in his deposition that he applied for leave in 2005 after he was diagnosed with cancer. Pl. Dep. at 40. Plaintiff also indicated that he filled out required paperwork, provided a doctor's note, obtained an additional period of medical leave, and confirmed that he received full healthcare coverage while he was on leave. <u>Id.</u> at 40-43.

Contrary to his allegations, the facts demonstrate that Plaintiff requested and was granted more than his statutorily permitted amount of FMLA leave. Accordingly, Plaintiff cannot as a matter of law establish the requisite fifth element that he was denied benefits to which he was entitled to under the FMLA. <u>See</u> <u>Alessi v. Monroe County</u>, 2010 U.S. Dist. LEXIS 2746, at *26 (W.D.N.Y. Jan. 13, 2010).

Thus, for the stated reasons, this Court grants Defendant's motion for summary judgment as to this claim because no rational

jury could find that Defendant interfered with Plaintiff's FMLA rights.

## B. **Retaliation under the FMLA**

Retaliation claims brought pursuant to the FMLA are analyzed under the burden-shifting test set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Roberts v. Health Ass'n, 308 F. App'x 568, 570 (2d Cir. 2009); see also Potenza v. City of New York, 365 F.3d 165, 167-68 (2d Cir. 2004) (*per curiam*). Pursuant to the McDonnell Douglas framework, the burden is initially on plaintiff to prove a prima facie case. See McDonnell Douglas Corp., 411 U.S. at 802. "To state a *prima facie* case for retaliation [under the FMLA], the plaintiff must show that: (1) [he] exercised rights protected under the FMLA; (2) [he] was otherwise qualified for h[is] position; (3) [he] suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." Rice, 2010 U.S. Dist. LEXIS at *7 (quoting Brown v. The Pension Boards, 488 F. Supp. 2d 395, 410 (S.D.N.Y. 2007)). If plaintiff establishes a *prima facie* case, the burden then shifts to defendant to articulate "some legitimate, non-discriminatory reason" for his action. McDonnell Douglas Corp., 411 U.S. at 802. Should defendant carry his burden, plaintiff must then prove by a preponderance of the evidence that defendant's legitimate reasons were not his true reasons, but were

merely pretext for retaliation.  Serby v. New York City Dep't of Educ., 2012 U.S. Dist. LEXIS 36841, at *23-24 (E.D.N.Y. Mar. 19, 2012)(citing Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)).  However, "the ultimate burden" of persuading the trier of fact that defendant retaliated against plaintiff remains at all times with plaintiff.  Id.

In his Complaint, Plaintiff alleges that he exercised rights protected under the FMLA by informing Defendant of his need for leave based on a qualifying medical condition, that he was qualified for his position, and that he suffered an adverse employment action when he was "wrongfully terminated six months after returning to work."  Pl.'s Compl. at ¶¶ 9, 30, 32.

Defendant contends that Plaintiff's claim fails because he is unable to establish the fourth element of a *prima facie* case of retaliation, i.e. that the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. This Court agrees.

It is evident that Plaintiff exercised his rights under the FMLA by taking leave in March of 2005 and that he suffered adverse action when his employment was terminated in March of 2006.  This Court will assume that Plaintiff was otherwise qualified for his position, though it is arguable that Plaintiff was no longer qualified because he could not master the new digital printing system.  Regardless, Plaintiff has not established that his

employment was terminated for retaliatory reasons. Thus, Plaintiff's claim fails because a *prima facie* case of retaliation in violation of the FMLA cannot be established when there is no evidence that demonstrates a retaliatory motive. <u>See</u> <u>Hale v. Mann</u>, 219 F.3d 61, 69-70 (2d Cir. 2000)(dismissing an FMLA retaliation claim because the plaintiff "presented no evidence indicating that the termination decision was related to his FMLA leave.").

Plaintiff has presented no evidence indicating that Defendant's decision to terminate his employment was related to his taking FMLA leave, or his request to take FMLA leave. Instead, Plaintiff offers his own unsubstantiated, subjective belief that the various employment actions were retaliatory. Specifically, he claims that Defendant had retaliatory intent because prior to the meeting in which he was terminated, he alleges that he overheard two coworkers state that "someone was going to rack up a large medical bill." Pl.'s Mem. of Law at 8-10. This statement was allegedly made in March of 2006, nearly six months after Plaintiff completed chemotherapy and radiation treatments and returned to work with no medical restrictions. Plaintiff alleges that Defendant was going to try to fire him so they would not be responsible for paying his medical bills and that this proves that Defendant had retaliatory intent behind its decision to terminate him. Pl.'s Mem. of Law at 9-10.

This allegation, however, fails to support Plaintiff's argument that his employment was terminated for retaliatory reasons. The statement that Plaintiff allegedly heard is merely hearsay, and thus is not admissible evidence to support Plaintiff's burden of proof. This alleged statement made in passing by coworkers is not indicative or dispositive that Defendant possessed a retaliatory motive when it terminated Plaintiff's employment.

Plaintiff also argues that temporal proximity establishes that Defendant terminated his employment for retaliatory reasons. Id. at 10. This Court disagrees, because "temporal proximity alone is insufficient to carry a plaintiff's burden of proof beyond the prima facie stage." Meggison v. Paychex, Inc., 679 F. Supp. 2d 379, 390 (W.D.N.Y. 2010)(citing Richter v. Monroe County Dep't of Soc. Serv., 2005 U.S. Dist. LEXIS 5800, at *23 (W.D.N.Y. Feb. 11, 2005)).

Here, Plaintiff was diagnosed with cancer in March of 2005, returned to work free of restrictions in October of 2005, and was not terminated until March of 2006. This timeline, standing alone, is not sufficient to establish a nexus between the FMLA leave taken in March of 2005 and Plaintiff's termination in March of 2006. See Hollander v. American Cyanamid Co., 895 F.2d 80, 85 (2d Cir. 1990)(finding that three months and twenty-four days is insufficiently temporally proximate to infer that [plaintiff's] termination was a result of taking FMLA qualifying leave).

Plaintiff does not dispute that he received a two day suspension for leaving work with projects undone, that Supervisor Adams received complaints from other employees about his disappearing during work hours and receiving numerous personal calls, and that he was warned about these complaints. Pl.'s Resp. to Def.'s Local Rule 56(a)(1) Statement at ¶¶ 30-32. In attempting to contest negative statements about his work performance, Plaintiff states that he "was a satisfactory employee, and was otherwise more than qualified for his position." Id. at ¶¶ 25, 27-29. He offers no corroborating evidence to support this conclusory statement. Where there is no "evidence to demonstrate that [an employer]'s given reasons for terminating [the plaintiff] are so weak, implausible, inconsistent, incoherent, or contradictory as to support a reasonable inference that [the employer] did not act for those reasons," it may be concluded that the plaintiff has "failed to meet [his] burden to demonstrate pretext." Metzler v. Fed. Home Loan Bank of Topeka, 464 F.3d 1164, 1181 (10th Cir. 2006)(concluding that plaintiff failed to meet her burden to demonstrate pretext when the evidence demonstrated that she was terminated for "her failure to meet deadlines and other poor job performance, poor attitude, and failure to maintain adequate job-related skills.")(citation omitted).

Assuming, *arguendo*, that Plaintiff could state a prima facie case of unlawful retaliation, Defendant has proffered evidence to

establish that it had legitimate non-discriminatory reasons for terminating Plaintiff's employment. The evidence demonstrates that Plaintiff was terminated due to excessive personal breaks and telephone calls, that coworkers complained about Plaintiff's behavior, and that Plaintiff had difficulty grasping the new digital printing system. Plaintiff's actions disrupted business operations, and his supervisors testified that Plaintiff lacked concern for the print shop operation. These explanations constitute legitimate, non-discriminatory reasons for terminating Plaintiff's employment. Plaintiff has failed to rebut these legitimate reasons, and has offered no evidence that Defendant's reasons for terminating his employment were a pretext for retaliation.

Thus, because Plaintiff has failed to produce evidence that Defendant terminated Plaintiff's employment in retaliation for his taking FMLA leave, this Court grants Defendant's motion for summary judgment with respect to this claim of retaliation.

## III. **ADA Claims**

The ADA prohibits discrimination against any "qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To state a *prima facie* case of discrimination under the ADA, a plaintiff must

demonstrate that (1) his employer is subject to the anti-discrimination provisions of the ADA; (2) he is disabled within the meaning of the ADA or perceived to be disabled by his employer; (3) he is otherwise qualified to perform the duties of his job; and (4) an adverse employment action was taken against him because of his disability. Giordano v. City of New York, 274 F.3d 740, 747 (2d Cir. 2001) (citations omitted).

ADA discrimination claims are subject to the burden-shifting analysis established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). After the plaintiff establishes a *prima facie* case, the employer then may offer, through the introduction of admissible evidence, a legitimate non-discriminatory reason for the discharge. Id. Ultimately, the plaintiff must produce evidence and carry the burden of persuasion that the proffered reason is pretextual. Id. (citation omitted).

### A. Violation of the ADA

Plaintiff asserts that he is disabled, or was perceived by Defendant to be disabled, due to cancer, and that Defendant violated the ADA because it terminated Plaintiff's employment on that basis. Pl.'s Dep. at 87; see also Pl.'s Compl. at ¶ 37. Defendant contends that Plaintiff cannot establish the requisite element that he was disabled within the meaning of the ADA, because Plaintiff was not disabled and Defendant did not regard him as disabled. Def.'s Mem. of Law at 12-19. This Court agrees.

-18-

### i. **Plaintiff Was Not Disabled Within the Meaning of the ADA.**

While there is no genuine dispute that Plaintiff was diagnosed with Hodgkin's Lymphoma in March of 2005, the determination of whether or not a person suffers from a disability under the ADA "is an individualized inquiry" that does not rest on the mere diagnosis of an impairment.  See <u>Sutton v. United Airlines</u>, 527 U.S. 471, 483 (1999).  Instead, courts are to look to "the effect of [an] impairment on the life of the individual." <u>See</u> 29 C.F.R. pt. 1630, App. § 1630.2(j); <u>see also</u>, <u>Toyota Motor Mfg., Kentucky, Inc. v. Williams</u>, 534 U.S. 184, 198 (2002) ("[i]t is insufficient for individuals attempting to prove disability status... to merely submit evidence of a medical diagnosis of impairment.").

Disability determinations under the ADA are made on a case-by-case basis.  <u>See</u> <u>Reeves v. Johnson Controls World Servs.</u>, 140 F.3d 144, 151-52 (2d Cir. 1998).  An individual is disabled within the meaning of the ADA if he suffers from a "physical or mental impairment that substantially limits one or more of the major life activities..." <u>See</u> 42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(g)(1).  A person also may be "disabled" if he has a record of such an impairment or is regarded as having such an impairment. <u>See</u> 42 U.S.C. § 12102(2)(A)-(C); 29 C.F.R. § 1630.2(g).  Regardless of which definition is used, the impairment at issue must "substantially limit" a major life activity.

Regulations promulgated under the Act define "major life activities" to include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." See 29 C.F.R. § 1630.2(i) (2004); see also Buckley v. Consol. Edison Co. of New York, Inc., 155 F.3d 150 (2d Cir. 1998)(en banc). To be "substantially impaired" from performing a major life activity, a plaintiff must have an impairment that "prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." See Toyota, 534 U.S. at 197.

Plaintiff's ADA claims are based on an alleged disability that he suffered at the time he returned to work for Defendant in October of 2005. He claims that "at the time he returned to work through the time he was terminated, [he] was under the continuous treatment of a physician for cancer and [was] receiving radiation treatment." Pl.'s Compl. at ¶ 15. Plaintiff also alleges that, because of his medical condition and continuous medical treatment, he requested permission from Supervisor Adams to receive personal calls and take short breaks. Id. at ¶ 16-17. He also claims, in a conclusory manner, that he was "terminated because of his disability." Id. at ¶ 24. This Court finds, however, that there is no evidence that Plaintiff suffered from a disability at the time of his termination.

As discussed previously, the evidence demonstrates that Plaintiff completed chemotherapy and radiation treatment before he returned to work in October of 2005. The evidence also shows that Plaintiff's doctors provided Defendant with two letters stating that he was free to return to work with no restrictions. Plaintiff worked seven and a half hour shifts when he returned to work and received training regarding the operation of the new digital printing system. Adams Dep. at 50, 65. Additionally, Plaintiff testified that if he had not been terminated he could have continued to do his job. Pl. Dep. at 84.

No medical evidence exists to substantiate Plaintiff's statements that he was "substantially impaired" from performing a major life activity. Courts in the Second Circuit have consistently held that when a plaintiff fails "to offer any medical evidence substantiating the specific limitations to which he claims he is subject due to his condition," he cannot establish that he is disabled within the meaning of the ADA. Baerga v. Hosp. for Special Surgery, 2003 U.S. Dist. LEXIS 17201, at *18 (S.D.N.Y. Sept. 30, 2003) (citing Johnson v. St. Clare's Hosp. & Health Center, 1997 U.S. Dist. LEXIS 22492, 1998 WL 236235, *8, (S.D.N.Y. May 13, 1998); Douglas v. Victor Capital Group, 21 F. Supp. 2d 379, 392 (S.D.N.Y. 1998) ("[Plaintiff's] testimony as to the (alleged) limits on his ability to walk, without supporting medical

testimony, simply is not sufficient to establish a prima facie case under the ADA.").

For the reasons stated, Plaintiff has not shown how his condition substantially limited his major life activities and, without such evidence, Plaintiff cannot establish a prima facie case that he is "disabled" as defined in the ADA.

### ii. **Defendant Did Not Regard Plaintiff as Disabled.**

The Court of Appeals has explained that "whether an individual is 'regarded as' having a disability turns on the employer's perception of the employee and is therefore a question of intent, not whether the employee has a disability." Roberts v. Health Ass'n, 308 F. App'x 568, 570-71 (2d Cir. 2009) (quoting Colwell v. Suffolk County Police Dep't, 158 F.3d 635, 646 (2d Cir. 1998) (internal quotation marks omitted)).

To meet this standard, however, it is not enough "that the employer regarded that individual as somehow disabled; rather, the plaintiff must show that the employer regarded the individual as disabled within the meaning of the ADA." Id. (emphasis omitted). Thus, to prevail, Plaintiff must adduce evidence that Defendant regarded him as having an impairment that "substantially limited" a major life activity. See id. Where, as here, the major life activity under consideration is that of working, "the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of

jobs." <u>Roberts</u>, 308 F. App'x at 571 (<u>citing</u> <u>Sutton v. United Air Lines, Inc.</u>, 527 U.S. 471, 491 (1999)).

Here, the evidence demonstrates that Defendant did not regard Plaintiff as disabled, or having an impairment that "substantially limited" his ability to work. As previously mentioned, Defendant had letters from Plaintiff's doctors that authorized him to return to work full-time without restrictions. Additionally, from the time he returned to work until the time he was terminated, Plaintiff worked seven and a half hour shifts daily and received specialized training regarding the operation of the new digital printing press. Plaintiff proffered no evidence that demonstrates that Defendant regarded him as having an impairment that made him unable to work in a broad class of jobs. Thus, for the reasons stated, Defendant's motion for summary judgment is granted regarding Plaintiff's ADA violation claim.

**B.** **Retaliation in Violation of the ADA**

Plaintiff alleges that he engaged in a protected activity when he "requested a reasonable accommodation" allowing him to receive personal calls and take short breaks because "he was still undergoing radiation," and that Defendant terminated him for making these requests. Pl.'s Compl. at ¶ 45. Defendant contends that, even if Plaintiff requested and was granted an accommodation sufficient to establish a *prima facie* case of retaliation, it produced a legitimate non-discriminatory reason for his

termination, i.e. that Plaintiff abused those accommodations. Def.'s Reply Mem. of Law at 8.

To establish a *prima facie* case of retaliation under the ADA, a plaintiff must demonstrate that "(a) he 'engaged in a protected activity,' (b) [his employer] was 'aware of this activity,' (c) [the employer] 'took adverse action against [him],' and (d) 'a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action.'" <u>Sista v. CDC Ixis North America, Inc.</u>, 445 F.3d 161, 177 (2d Cir. 2006) (quoting <u>Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown</u>, 294 F.3d 35, 54 (2d Cir. 2002)). Retaliation claims under the ADA are analyzed using the <u>McDonnell-Douglas</u> burden-shifting framework. <u>See</u> <u>Lovejoy-Wilson v. NOCO Motor Fuel, Inc.</u>, 263 F.3d 208, 223 (2d Cir. 2001) ("We analyze a retaliation claim under the ADA using the same framework employed in Title VII cases.").

As discussed previously, the evidence establishes that Plaintiff completed chemotherapy and radiation treatments prior to returning to work in October of 2005. The evidence also demonstrates that Plaintiff's doctors cleared him to return to work free of restrictions. Nonetheless, when he returned to work, Plaintiff told Supervisor Adams that he was still undergoing radiation treatment and, based on this representation, Plaintiff was allowed to use his cell phone to talk to his doctor and to take

short breaks to get fresh air.  Def.'s Statement of Undisputed Material Facts at ¶ 21.

Defendant argues that it terminated Plaintiff's employment for two legitimate non-retaliatory reasons: (1) that Plaintiff was unable to grasp the new digital printing system, despite training, and (2) that Plaintiff had been previously suspended from work for leaving projects undone, other employees complained he was disappearing during work hours and receiving too many personal telephone calls, and Plaintiff had been repeatedly warned about the complaints.  Def.'s Mem. of Law at 8-9.

The ADA's prohibition against retaliation protects an individual when he seeks a "reasonable accommodation" for his disability.  Sussle v. Sirina Prot. Sys. Corp., 269 F. Supp. 2d 285, 313 (S.D.N.Y. 2003) (citing Weixel v. Bd. of Educ. of City of New York, 287 F. 3d 138, 148 (2d Cir. 2002)).  A request for an accommodation must be made in good faith, because "protection from retaliation afforded under the ADA does not extend to an employee whose request is motivated by something other than a good faith belief that he/she needs an accommodation."  Shellenberger v. Summit Bancorp., 318 F.3d 183, 191 (3d Cir. 2003).  Defendant argues that, because Plaintiff completed his radiation treatment before he returned to work in October of 2005, he was not entitled to accommodations in March 2006 and he abused the accommodations that were given to him.  Def.'s Reply Mem. of Law at 9.

Plaintiff has not demonstrated a causal connection between the protected activity and the adverse action. There is no evidence that Defendant's explanation for terminating Plaintiff's employment is a pretext for retaliation in violation of the ADA. Accordingly, Defendant's motion for summary judgment is granted with respect to this claim.

## VI. __New York State Human Rights Law Retaliation Claim__

The legal standards for discrimination and retaliation claims under the NYSHRL are analytically identical to claims brought under the ADA. <u>Sclafani v. PC Richard & Son</u>, 668 F. Supp. 2d 423, 440 n. 10 (E.D.N.Y. 2009) (<u>citing</u> <u>Rogers v. New York Univ.</u>, 250 F. Supp. 2d 310, 313 n. 4 (S.D.N.Y. 2002)). Thus, Plaintiff's NYSHRL retaliation claim fails as a matter of law for the same reasons that his ADA retaliation claim fails, as discussed above. <u>Rogers</u>, 250 F. Supp. 2d at 313 n. 4. ("Since the legal standards for discrimination claims under the ADA and New York state and city law are essentially the same, discussion of the federal ADA claims applies to the state law claims as well."). Accordingly, Defendant's motion for summary judgment is granted with respect to this claim.

## CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment is granted with respect to all claims, and

Plaintiff's Complaint is dismissed in its entirety with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

**S/Michael A. Telesca**

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     August 13, 2013
           Rochester, New York